**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| NINGBO NINGSHING UBAY SUPPLY CHAIN CO., LTD<br><br>*Plaintiff*,<br><br>v.<br><br>PARTNERSHIPS AND UNINCORPORATEDASSOCIATIONS IDENTIFIED ON SCHEDULE "A"<br>*Defendants*. | **CASE NO.** 23-cv-15775<br><br>**Judge:** Virginia M. Kendall<br><br>**Magistrate Judge:** |

**EXPERT DECLARATION OF JIM GANDY AS TO NON-INFRINGEMENT OF DESIGN PATENT D998,387**

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. QUALIFICATIONS .......... 2

III. MY UNDERSTANDING OF THE APPLICABLE LEGAL PRINCIPLES .......... 4

IV. ANALYSIS OF THE FIRST EMBODIMENT OF THE ‘387 PATENT AND THE ACCUSED CABINETS .......... 5

a. The First Embodiment Of The ‘387 Patent And “The Accused Cabinets”, B0CCXZN3QS, B0CCY173V4, B0CCXTQTZ8 And B0CCY33S4C .......... 6

b. The First Embodiment Of The ‘387 Patent And “The Accused Cabinets”, B0CD2MD6W9, B0BWF4NJBK And B0CBP2FGMZ .......... 9

c. The Second Embodiment Of The ‘387 Patent And “The Accused Cabinets”, B0CCXZN3QS, B0CCY173V4, B0CCXTQTZ8 And B0CCY33S4C .......... 12

V.ANALYSIS OF THE SECOND EMBODIMENT OF THE ‘387 PATENT AND THE ACCUSED CABINETS B0CD2MD6W9, B0BWF4NJBK AND B0CBP2FGMZ AND THE PRIOR ART .......... 15

a. The Second Embodiment Of The ‘387 Patent, “The Accused Cabinet”, B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ And The Prior Art EU Design .......... 16

VI. CONCLUSION .......... 23

I, Jim Gandy, submit this declaration in support of defendant AOBAFUIR. In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the statements herein are true and correct to the best of my knowledge, belief, recollection, and understanding. All statements made on information and belief are believed to be true. I am over the age of eighteen, and, if asked to do so, I could competently testify to the matters set forth herein.

## I. INTRODUCTION

1. I have been retained by counsel as an independent expert witness to provide myOpinion regarding the above-captioned proceeding. Based on my education and my experience in design patents I have been asked to render an opinion regarding the alleged infringement of the sole claim of design patent D998,387, ("The Asserted Design Patent"). This declaration contains my opinions concerning the alleged infringement of "The Asserted Design Patent". Defendant, AOBAFUIR, requested that I opine on the alleged infringement of "The Asserted Design Patent".

2. As discussed in further detail in this Declaration and any supplemental reports,testimony, or declarations that I may provide, it is my opinion that "The Asserted Design Patent" is not infringed.

3. The following is my report and it and the exhibits hereto contain my opinions and the support, therefore. In connection with rendering my opinion I have reviewed and relied upon the following materials:

- U.S. Design Patent No. D998,387 ("the '387 Patent").
- File History for U.S. Design Patent No. D998,387 Patent.
- U.S. Design Patent No. D949,606 ("the '606 Patent")
- U.S. Design Patent No. D862,943 ("the '943 Patent")
- U.S. Design Patent No. D938,436 ("the '436 Patent")
- EU00017203760006S (prior art EU Design) 2010-06-23
- COMPLAINT FOR PATENT INFRINGEMENT
- MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION FOR ENTRY OF PRELIMINARY INJUNCTION AS TO DEFENDANT AOBAFUIR IN SCHEDULE A

4. In addition to the above materials, I have also relied on my own education, training, experience and knowledge in the field of design patents.

5. I may also consider additional documents and information that have not yet been provided to or discovered by me should such documents and information be brought to my attention after the date I submit this Declaration, and I reserve the right to add to or amend my opinions in connection with the same.

6. The analysis in this Declaration is exemplary. Additional reasons may support my conclusions, but they do not form my current analysis. The fact that I do not address a particular reason does not imply that I would agree or disagree with such additional reason.

7. I receive compensation at a rate of $350 per hour for my time spent on this matter, except for any travel time, which is billed at one-half of my hourly rate. I am also being reimbursed for reasonable and customary expenses associated with my work on this matter. I have no financial interests in the patents involved in this proceeding, and my compensation is not dependent on the outcome of this proceeding. The conclusions I present are based on my own judgment. I am not an employee of AOBAFUIR, Glacier Law LLP, or any affiliated companies.

## II. QUALIFICATIONS

8. My current curriculum vitae is attached as Exhibit 1.

9. I hold a Bachelor of Science in Architectural Design Technology from Temple University in Philadelphia, Pennsylvania, where I graduated in 1972.

10. Upon graduation, I worked as a Design Patent Examiner in Art Unit 2911 for the United States Patent and Trademark Office ("USPTO"). While in Art Unit 2911, I primarily worked in class D12 "Transportation." My responsibilities included examining design patent applications, examining reexamination and reissue applications, issuing determinations on examined applications, initiating interference proceedings, and preparing examiner's answers for applications on appeal to the Board of Patent Appeals and Interferences.

11. In 1979, I was promoted to Primary Examiner and continued to work as a Design Patent Examiner in Art Unit 2911 for the USPTO. With this promotion, I gained full signatory authority and trained new examiners while occasionally fulfilling supervisory patent examiner duties when the art unit supervisor was away.

12. In my 24 years of work as a Design Patent Examiner at the USPTO, I made patentability determinations in approximately 10,000 design patent applications that I examined. I have examined design patent applications in every design class, including class D6 Furnishings.

13. In 1996, I became a Supervisory Patent Examiner for the USPTO and transitioned to Art Unit 2913, which also reviews designs for Furnishings among other classes of art. As supervisor, I managed the workflow, quality, and timeliness of examiners in my art unit. I also trained junior examiners and provided additional training to primary examiners to maintain consistency in work product. I evaluated the performance of all examiners in the art unit. Finally, I also developed the Design Examiner Supplemental Training Guide and led the program for uniformity of examination practice for the entire Design Patent Technology Center.

14. In 1998, I became the Design Patent Practice Specialist for Technology Center 2900 at the USPTO. I continued to train all new examiners, junior examiners when they joined the USPTO and trained all examiners at Technology Center 2900 through continuing education programs. I was in charge of updating the Design Examiner Supplemental Training Guide and Chapter 1500 Design Patents in the Manual of Patent Examining Procedure. I responded to inquiries from external customers about design patent practice and procedure on a daily basis. I continuously reviewed cases, decisions, and reports coming from the courts, the Board, and the Office of Patent Quality Review to train examiners and update the previously mentioned documents. Finally, I also made presentations to attorneys and inventor groups on behalf of the USPTO.

15. During my career at the USPTO, I received an outstanding rating under the performance appraisal plan for 32 consecutive years. I also received various accolades including the Department of Commerce Bronze Medal Award in 1983; the USPTO's Distinguished Career Award in 2000 in recognition of consistent superior performance in design patent application examination and in art unit leadership; and the Norman P. Morgenstern Award in 2004 for the leadership and innovation contributions made by Supervisory Patent Examiners.

16. Currently, and since my retirement from the USPTO in 2005, I have occasionally counseled patent attorneys and agents who file design patents applications.

17. In the past I have served as an expert in other design patent related matters, a detailed list of cases in which I have served as a design patent expert is set forth in my curriculum vitae which is attached as Exhibit 1.

## III. MY UNDERSTANDING OF THE APPLICABLE LEGAL PRINCIPLES

18. As a design patent expert, I am not an attorney, I am offering design assessments and opinions. In rendering my analysis, I have been informed by counsel for AOBAFUIR the legal standards for infringement of a design patent. I have applied those standards in forming the opinion expressed in this report.

19. Based on my conversations with counsel for AOBAFUIR and my review of administrative decisions and design patent law principles, I have the following understanding of design patent infringement. First, it is my understanding that the claim in a design patent application is directed to the entire design and not individual parts or elements thereof. In addition, it is my understanding that the proper inquiry in determining if a patented design has been infringed is whether the accused design appropriates the claimed design as a whole. Further, it is my understanding that design patent infringement is determined by first construing the claim to the design and then comparing it to the design of the accused device. It's also my understanding that in construing the claim a design is better represented by an illustration rather than a verbal description since any description would not likely be intelligible without the illustration. Therefore, it is my opinion that the claim of the Patent-in-Suit should be construed based on the drawings.

20. I have further been informed by counsel for AOBAFUIR that the sole test for determining whether a design patent has been infringed is the "ordinary observer" test. It's my understanding that under the "ordinary observer" test for infringement of a patented design an accused design must be so similar in overall appearance to the claimed design that an "ordinary observer" would be deceived into purchasing one, supposing it to be the other. Moreover, it's my understanding that under this test an "ordinary observer" is one who is conversant with the prior art and that in order to determine whether an accused design appropriates the patented design a comparison of the features of the patented design with the prior art and the accused design may be necessary. In this instance, an "ordinary observer" is a potential purchaser who is familiar with furniture cabinets and their different designs.

21. In addition, I have been informed by counsel for AOBAFUIR that a design patent infringement analysis is a two-step process. The first step is to consider whether the claimed design and accused products are "sufficiently distinct" or "plainly dissimilar." If the claimed design and the accused products are found to be plainly dissimilar, there is no patent infringement. However, if the claimed and accused designs are not "plainly dissimilar", I understand that the second step in an infringement analysis involves a three-way comparison to compare the patented and accused designs in the context of similar designs found in the prior art.

22. As I understand, the role of prior art is to help the finder of fact consider seemingly small or minor details that differentiate the patented design from the prior art. When there are similar prior art designs the differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical "ordinary observer" who is conversant with the prior art.

23. As will be shown, all seven of "The Accused Cabinets" are "sufficiently distinct" and "plainly dissimilar" from the first embodiment of the claimed design of the '387 Patent directed to a two door "Striped Cabinet" and there is no patent infringement in my opinion. In addition, it will further be shown that four of "The Accused Cabinets" are "sufficiently distinct" and "plainly dissimilar" from the second embodiment of the claimed design of the '387 Patent directed to a four door "Striped Cabinet" and again in my opinion there is no patent infringement. However, the peripheral shape of the closest prior art, the second embodiment of the claimed design of "the '387 Patent" and three of "The Accused Cabinets" are virtually identical, for the reasons explained below, and have many of the same design features. In light of that I do not consider the second embodiment of the claimed design of "the '387 Patent" and three of "The Accused Cabinets" to be "plainly dissimilar". Therefore, my infringement analysis will involve a three-way comparison of the second embodiment of the patented design and three of the accused designs in the context of the closest prior art designs. As my analysis will show, because of the similarity of the prior art designs, the differences between the second embodiment of the claimed design of "the '387 Patent" and three of "The Accused Cabinets", in my opinion, would be considered significant to the hypothetical "ordinary observer" who is conversant with the prior art.

## IV. ANALYSIS OF THE FIRST EMBODIMENT OF THE '387 PATENT AND THE ACCUSED CABINETS

24. In order to assess whether the design of "The Accused Cabinets" appropriates the first embodiment of the claimed design of the '387 patent, it is appropriate to identify the features of each and then compare them with each other. In doing so, I understand based on the title, that the pattern of diagonal solid lines shown on the front surface of the cabinet in Figs 1, 10 and 17, represent stripes and will be considered part of the claimed design in my analysis even though they are not shown in the Fig. 3 and 12 front elevation views. In addition, I understand that the broken lines shown in the drawing views of the '387 patent are directed to unclaimed portions of the Striped Cabinet and form no part of the claimed design in each of those embodiments. Specifically, the sentence following the Fig. 19 descriptions states:

> "The broken lines in the figures are for the purposes of illustrating portions of the striped cabinet, which form no part of the claimed design."

To be clear, based on the above description, it's my understanding that the broken lines shown in in Figs. 1, 3, 10 and 12, directed to the diamond shaped pattern on the front surface of the "Striped Cabinet" form no part of the claimed design. The only other broken lines shown in the drawing are in the Fig. 16 bottom view and the Fig. 18 and 19 partial enlarged views directed to what I understand to be holes or openings. Therefore, for the purpose of this report I consider the diamond shaped pattern shown in broken lines on the front surface of the "Striped Cabinet" to form no part of the claimed design and therefore will not be considered in assessing the features of the claimed design of the '387 patent. With that said, below is a side-by-side visual comparison of the first embodiment of the claimed design of the '387 patent and "The Accused Cabinets".

**a. The First Embodiment of The '387 Patent And "The Accused Cabinets", B0CCXZN3QS, B0CCY173V4, B0CCXTQTZ8 And B0CCY33S4C**



Fig.1 and 3 of Embodiment 1 of '387 Patent



Accused Cabinet B0CCXZN3QS




Accused Cabinet B0CCY173V4




Accused Cabinet B0CCXTQTZ8




Accused Cabinet B0CCY33S4C

25. In view of the above visual depictions of the first embodiment of the claimed Design of the ‘387 patent and the design of “The Accused Cabinets” B0CCXZN3QS, B0CCY173V4, B0CCXTQTZ8 and B0CCY33S4C it’s clear that they all have plain, flat, sides and top surfaces and the same type of support legs and drawer handles. However, other than those common features, the overall shape and appearance of “The Accused Cabinets” B0CCXZN3QS, B0CCY173V4, B0CCXTQTZ8 and B0CCY33S4C is “sufficiently distinct” and “plainly dissimilar” than the first embodiment of the claimed design of the ‘387 patent such that an “ordinary observer”, familiar with the prior art, would hardly be confused so as to purchase one thinking it to be the other. Specifically, “The Accused Cabinets” B0CCXZN3QS, B0CCY173V4, B0CCXTQTZ8 and B0CCY33S4C are horizontally elongated comprising six drawers with a three-drawer side by side arrangement, as opposed to the first embodiment of the claimed design of the ‘387 patent which consists of just two drawers that are stacked one over the other and is substantially square in shape. In addition, as shown in the Fig. 1 perspective view of the first embodiment of the claimed design of the ‘387 patent disclosed above, the front surface has a pattern of six horizontally spaced diagonal lines or stripes, whereas the front surface of “The Accused Cabinets” B0CCXZN3QS, B0CCY173V4, B0CCXTQTZ8 and B0CCY33S4C have a pattern of multiple diamond shapes on each of the six drawers. These differences between the first embodiment of the claimed design of the ‘387 patent and “The Accused Cabinets” B0CCXZN3QS, B0CCY173V4, B0CCXTQTZ8 and B0CCY33S4C renders them “sufficiently distinct” and “plainly dissimilar” and would not confuse an “ordinary observer”, familiar with the prior art, so as to purchase one thinking it to be the other.

**b. The First Embodiment Of The ‘387 Patent And “The Accused Cabinets”, B0CD2MD6W9, B0BWF4NJBK And B0CBP2FGMZ**




Fig.1 and 3 of Embodiment 1 of ‘387 Patent




Accused Cabinet B0CD2MD6W9



Accused Cabinet B0BWF4NJBK



Accused Cabinet B0CBP2FGMZ

26. In view of the above visual depictions of the first embodiment of the claimed design of the ‘387 patent and the design of “The Accused Cabinets” B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ it’s clear that they all have plain, flat, sides and top surfaces and the same type of support legs and drawer handles. However, other than those common features, the overall shape and appearance of “The Accused Cabinets” B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ is “sufficiently distinct” and “plainly dissimilar” than the first embodiment of the claimed design of the ‘387 patent such that an “ordinary observer”, familiar with the prior art, would hardly be confused so as to purchase one thinking it to be the other. Specifically, “The Accused Cabinets” B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ are vertically elongated comprising four drawers that are stacked one over the other, as opposed to the first embodiment of the claimed design of the ‘387 patent which consists of just two drawers that are stacked one over the other and is substantially square in shape. In addition, as shown in the Fig. 1 perspective view of the first embodiment of the claimed design of the ‘387 patent disclosed above, the front surface has a pattern of six horizontally spaced diagonal lines or stripes, whereas the front surface of “The Accused Cabinets” B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ have a pattern of multiple diamond shapes on each of the four drawers. These differences between the first embodiment of the claimed design of the ‘387 patent and “The Accused Cabinets” B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ renders them “sufficiently distinct” and “plainly dissimilar” and would not confuse an “ordinary observer”, familiar with the prior art, so as to purchase one thinking it to be the other. That is, an “ordinary observer”, familiar with the prior art, would not be induced to purchase the four-drawer cabinet B0CD2MD6W9, B0BWF4NJBK or B0CBP2FGMZ thinking it to be the first embodiment two drawer cabinet of the claimed design of the ‘387 patent, particularly when the surface pattern on the front of the four drawer cabinets differs from that on the two drawer cabinet.

**c. The Second Embodiment Of The ‘387 Patent And “The Accused Cabinets”, B0CCXZN3QS, B0CCY173V4, B0CCXTQTZ8 And B0CCY33S4C**





Figs. 10 and 12 of Embodiment 2 of ‘387 Patent





Accused Cabinet B0CCXZN3QS




Accused Cabinet B0CCY173V4




Accused Cabinet B0CCXTQTZ8




Accused Cabinet B0CCY33S4C

27. In view of the above visual depictions of the second embodiment of the claimed design of the '387 patent and the design of "The Accused Cabinets" B0CCXZN3QS, B0CCY173V4, B0CCXTQTZ8 and B0CCY33S4C it's clear that they all have plain, flat, sides and top surfaces and the same type of support legs and drawer handles. However, other than those common features, the overall shape and appearance of "The Accused Cabinets" B0CCXZN3QS, B0CCY173V4, B0CCXTQTZ8 and B0CCY33S4C is "sufficiently distinct" and "plainly dissimilar" than the second embodiment of the claimed design of the '387 patent such that an "ordinary observer", familiar with the prior art, would hardly be confused so as to purchase one thinking it to be the other. Specifically, "The Accused Cabinets" B0CCXZN3QS, B0CCY173V4, B0CCXTQTZ8 and B0CCY33S4C are horizontally elongated comprising six drawers with a three-drawer side by side arrangement, as opposed to the second embodiment of the claimed design of the '387 patent which consists of four drawers that are stacked one over the other and is vertically elongated and rectangular in shape. In addition, as shown in the Fig. 10 perspective view of the second embodiment of the claimed design of the '387 patent disclosed above, the front surface has a pattern of seven horizontally spaced diagonal lines or stripes, whereas the front surface of "The Accused Cabinets" B0CCXZN3QS, B0CCY173V4, B0CCXTQTZ8 and B0CCY33S4C have a pattern of multiple diamond shapes on each of the six drawers. These differences between the second embodiment of the claimed design of the '387 patent and "The Accused Cabinets" B0CCXZN3QS, B0CCY173V4, B0CCXTQTZ8 and B0CCY33S4C renders them "sufficiently distinct" and "plainly dissimilar" and would not confuse an "ordinary observer", familiar with the prior art, so as to purchase one thinking it to be the other. That is, an "ordinary observer", familiar with the prior art, would not be induced to purchase the six drawer cabinet B0CCXZN3QS, B0CCY173V4, B0CCXTQTZ8 or B0CCY33S4C with a three drawer side by side arrangement thinking it to be the second embodiment four drawer cabinet of the claimed design of the '387 patent having a stacked arrangement, particularly when the surface pattern on the front of the six drawer cabinets differs from that on the four drawer cabinet.

## V. ANALYSIS OF THE SECOND EMBODIMENT OF THE '387 PATENT AND THE ACCUSED CABINETS B0CD2MD6W9, B0BWF4NJBK AND B0CBP2FGMZ AND THE PRIOR ART

28. In order to assess whether the design of "The Accused Cabinets" B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ appropriates the second embodiment of the claimed design

of the '387 patent, it is appropriate to identify the features of each and then compare them with each other and the prior art. In doing so, as previously stated, I understand based on the title, that the pattern of diagonal solid lines shown on the front surface of the cabinet in Figs 1, 10 and 17, represent stripes and will be considered part of the claimed design in my analysis even though they are not shown in the Fig. 3 and 12 front elevation views. In addition, I understand, as indicated previously above, that the broken lines shown in the drawing views of the '387 patent are directed to unclaimed portions of the "Striped Cabinet" and form no part of the claimed design. Therefore, those broken lines will not be considered in assessing the features of the second embodiment of the claimed design of the '387 patent. In addition, since "The Accused Cabinets" B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ are exactly the same design except for their color, pink, white and black respectively, they are being considered together in this analysis with the second embodiment of the claimed design of the '387 patent and the prior art. Also, the design of "The Accused Cabinets" B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ and the second embodiment of the claimed design of the '387 patent will be compared to the features of the four-drawer cabinet disclosed in the European Union Design Registration No. EU001720376, (prior art EU design) which I consider to be the closest prior art to them. With that said, below is a side-by-side visual comparison of the second embodiment of the claimed design of the '387 patent and the design of "The Accused Cabinets" B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ and the prior art EU design.

**a. The Second Embodiment Of The '387 Patent, "The Accused Cabinet", B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ And The Prior Art EU Design**



Perspective View of Second Embodiment
of '387 Patent



Perspective View of Accused Cabinet
B0CD2MD6W9



Perspective View of Accused Cabinet
B0BWF4NJBK



Perspective View of Accused Cabinet
B0CBP2FGMZ



Perspective View of Prior Art EU Design



Front View of Second Embodiment
'387 Patent



Front View of Accused Cabinet
B0CD2MD6W9



Front View of Accused Cabinet
B0BWF4NJBK



Front View of Accused Cabinet
B0CBP2FGMZ



Front View of EU Design

29. In view of the above visual depictions of the second embodiment of the claimed design of the ‘387 patent and the design of “The Accused Cabinets” B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ, and the prior art EU design it’s clear that they all have a plain, flat, side and top surface and the same type of support legs. Therefore, these features of “The Accused Cabinets” B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ are no closer in appearance to the corresponding features of the second embodiment of the claimed design of the ‘387 patent than those same features depicted in the prior art EU design and cannot be relied upon as a basis for infringement of the second embodiment of the claimed design of the ‘387 patent. Note is made of the fact that the drawers of the prior art EU design do not have handles such as those shown on the drawers of the second embodiment of the claimed design of the ‘387 patent and “The Accused Cabinets” B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ. However, the claimed design in the prior art design patents ‘606 and ‘943, depicted below, includes drawer handles such as those shown in the claimed design of the ‘387 patent and “The Accused Cabinets” B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ. Therefore, the drawer handles are not new with the claimed design of the ‘387 patent and cannot be relied upon by themselves as a basis for infringement of the second embodiment of the claimed design of the ‘387 patent. As stated previously above, the proper inquiry in determining if a patented design has been infringed is whether the accused design appropriates the claimed design as a whole.



D949,606 Patent



D862,943 Patent

30. Note is further made of the enlarged view showing the bracket of one of the leg supports attached to the bottom surface of the claimed design of the '387 patent and numbered as Fig. 19 in the drawings, shown below. However, the prior art EU design shows a bottom view of the four drawer cabinet having brackets for the leg supports basically the same as that shown in Fig. 19 of the '387 patent drawings as shown below. Therefore, as with the case of the drawer handles discussed above, the bracket feature shown in Fig. 19 of the drawings of the '387 patent is not new with the claimed design of the '387 patent and cannot be relied upon by itself as a basis for infringement of the second embodiment of the claimed design of the '387 patent. Again, the proper inquiry in determining if a patented design has been infringed is whether the accused design appropriates the claimed design as a whole.



Fig. 19 of '387 Patent showing
Leg Support Bracket Detail



Bottom View of Prior Art EU Design showing
Leg Support Brackets

31. Fig.18 of the drawings of the '387 patent shows an enlarged detail view of an anti-toppling device attached to the upper rear surface of the claimed design as shown below. This feature is also shown on the upper rear surface of "The Accused Cabinets" B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ as depicted below and is intended to be attached to a wall so as to prevent the cabinet from toppling over. Based on the purpose of this feature shown in both the claimed design of the '387 patent and "The Accused Cabinets" B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ, it's clear that it is for functional purposes and has no ornamental value and can hardly be the basis for infringement of the second embodiment of the claimed design of the '387 patent by itself. The proper inquiry in determining if a patented design has been infringed is whether the accused design appropriates the claimed design as a whole.



Fig.18 of ‘387 Patent showing Anti-toppling device



Partial Rear View of Accused Cabinets B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ showing Anti-toppling device

32. As shown in the perspective view of the second embodiment of the claimed designof the ‘387 patent disclosed above, the front surface has a pattern of seven horizontally spaced diagonal lines or stripes, whereas the front of “The Accused Cabinets” B0CD2MD6W9 B0BWF4NJBK and B0CBP2FGMZ, have a pattern of multiple diamond shapes on each of the four drawers, while the front surface of the prior art EU design has no surface pattern but is flat and plain. As shown and described above the front surface of the claimed design of the ‘387 patent, “The Accused Cabinets” B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ, and the prior art EU design all differ. However, since the diamond shaped pattern shown in broken lines on the front surface of the second embodiment of the claimed design of the ‘387 patent forms no part thereof, it’s my opinion that the front surface of the second embodiment of the claimed design of the ‘387 patent, which includes seven horizontally spaced diagonal lines or stripes, is closer in appearance to the flat and plain front surface of the prior art EU design than the front of “The Accused Cabinets” B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ which have a pattern of multiple diamond shapes on each of the four drawers. It’s further my opinion that the pattern of multiple diamond shapes on the front surface of each of the four drawers of “The Accused Cabinets” B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ creates a significantly different visual impression than the seven horizontally spaced diagonal lines or stripes on the front surface

of the second embodiment of the claimed design of the '387 patent such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of "The Accused Cabinets" B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ do not infringe the second embodiment of the claimed design of the '387 patent.

33. In view of the above analysis it's my opinion that the difference in the front surface of second embodiment of the claimed design of the '387 Patent and "The Accused Cabinets" B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ identified above when considered as a whole distinguishes the overall appearance of "The Accused Cabinets" B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ over the second embodiment of the claimed design of the '387 Patent such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of "The Accused Cabinets" B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ does not infringe the second embodiment of the claimed design of the '387 Patent.

## VI. CONCLUSION

34. For the reasons stated herein it is my opinion that an "ordinary observer", onversant with the prior art, would consider "The Accused Cabinets" B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ ***dissimilar*** in overall appearance to the second embodiment of the claimed design of the '387 Patent such that an "ordinary observer" would ***not*** be deceived into purchasing one, supposing it to be the other. Hence, it's my opinion that the design of "The Accused Cabinets" B0CD2MD6W9, B0BWF4NJBK and B0CBP2FGMZ does not infringe the second embodiment of the claimed design of the '387 Patent for the reasons stated above.

Dated: May 20, 2024

Jim Gandy

**Jim Gandy**