IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NINGBO NINGSHING UBAY SUPPLY CHAIN CO. LTD., <br><br> *Plaintiff*, <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, <br><br> *Defendants*. | No. 23 C 15775 <br><br> Chief Judge Virginia M. Kendall |

## MEMORANDUM OPINION & ORDER

Plaintiff Ningbo Ningshing Ubay Supply Chain Co. Ltd. ("Ningbo") sells various cabinets on retail platforms. They hold a corresponding U.S. Patent No. D998,387 (the " '387 Patent") issued on September 12, 2023. (Dkt. 117-1). On November 8, 2023, Ningbo brought an action for federal patent infringement against Defendant Xiamen Yihui Youpin Network Technology Co., Ltd. d/b/a Aobafuir ("Aobafuir") and other internet merchants listed on the Schedule A. 35 U.S.C. § 271; (Dkt. 1). Ningbo sought damages and injunctive relief under 35 U.S.C. §§ 283–84 and subsequently moved for a preliminary injunction. (*Id.*; Dkt. 96). Aobafuir opposes the preliminary injunction and requests the Court deny it in its entirety. (Dkt. 106). The Court held an evidentiary hearing on June 25, 2024. (Dkt. 120). For the following reasons, Ningbo's preliminary injunction [96] is denied as to Aobafuir.

## PROCEDURAL BACKGROUND

Ningbo filed its first motion for a preliminary injunction on January 3, 2024, (Dkt. 33), which the Court granted, (Dkt. 38). In March 2024, Aobafuir appeared and moved to vacate the

preliminary injunction. (Dkt. 71). Aobafuir argued that they were not properly served nor received notice of the preliminary injunction. (*See* Dkt. 87 at 3). Upon Ningbo's voluntary motion, the Court vacated the preliminary injunction and granted Ningbo leave to file a second preliminary injunction with respect to Aobafuir. (Dkts. 89, 95). On April 30, 2024, Ningbo filed its second preliminary injunction, which is substantially identical to the first. (Dkt. 96 at 1–2). The Court held an evidentiary hearing on June 25, 2024. (Dkts. 107, 120).

## DISCUSSION

The Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014) (quoting *Winter v. Nat. Res. Def. Counsil, Inc.*, 555 U.S. 7, 20 (2008)). "To obtain a preliminary injunction, a party must show that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016) (quoting *Winter*, 555 U.S. at 20). The first two factors—likelihood of success on the merits and irreparable harm—are the most important as a court may deny a motion for a preliminary injunction if "a party fails to establish *either* of the two critical factors." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994) (emphasis in original). Moreover, the Court applies Federal Circuit law since a motion for a preliminary injunction "involves substantive matters unique to patent law." *Revision Mil., Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012).

I. **Likelihood of Success on the Merits**

The Court begins by evaluating Ningbo's likelihood of success on the merits of its design patent infringement claim. This threshold requirement "is often decisive." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 & n.4 (7th Cir. 2022) (citation omitted). "To show a likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted [design patent] claims." *ABC Corp. I v. P'ships & Unincorporated Assocs. Id'd on Schedule "A"*, 52 F.4th 934, 942 (Fed. Cir. 2022). This means that the plaintiff must demonstrate that any defense raised "lacks substantial merit." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350–51 (Fed. Cir. 2001); *see Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1377 (Fed. Cir. 2024) ("The relevant inquiry is therefore whether the patentee has shown it is more likely than not to prevail over an invalidity challenge."). Otherwise, the preliminary injunction should not issue. *Amazon.com, Inc.*, 239 F.3d at 1350–51.

   a. **Validity and Infringement**

Aobafuir challenges Ningbo's likelihood of proving infringement on three bases: (1) the prosecution history shows that Ningbo voluntarily restricted its patent; (2) Aobafuir's diamond-shaped ornamentation does not infringe upon Ningbo's claimed diagonal striped lines; and (3) Ningbo's patent is invalid for indefiniteness.

   i. **Prosecution History Estoppel**

Ningbo holds the '387 Patent, issued on September 12, 2023. (Dkt. 117-1). The patent includes two claim embodiments, consisting of a two-drawer and four-drawer cabinet.

3



FIG. 1         FIG. 10

(Dkt. 117-1 at 3, 12). To establish prosecution history estoppel, the Court must determine whether an amendment filed in the U.S. Patent and Trademark Office ("USPTO") "has narrowed the literal scope of a claim." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366 (Fed. Cir. 2003) (citation omitted). Prosecution history estoppel applies "when the [patentee] makes a narrowing amendment for purposes of patentability, or clearly and unmistakably surrenders subject matter by arguments made to the examiner." *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1344 (Fed. Cir. 2005).

Here, the Court understands that Ningbo accuses Aobafuir of infringement based on two different categories of designs: three four-drawer cabinets, and four six-drawer cabinets. (Dkt. 98-1 (listing the products' Amazon Standard Identification Numbers ("ASINs"))); Dkt. 121 at 24:7–15). Aobafuir presented evidence that at the time Ningbo sought the '387 Patent, the USPTO imposed a restriction requirement. (Dkt. 106-3; Dkt. 121 at 14:10–16). Ningbo's initial drawings

4

submitted to the USPTO included six-drawer cabinets. (Dkt. 106-2). Yet, the USPTO sent Ningbo notice that:

> The difference in the appearance of the single-vertical two/four drawer cabinet, double-vertical six drawer cabinet, and various height three drawer cabinet . . . creates the difference in the overall appearance that create(s) patentably distinct designs.

(Dkt. 106-3 at 4). Thus, "[r]estriction is required under 35 U.S.C. § 121" and Ningbo had to elect a single group for prosecution. (*Id.*) Ningbo chose to elect figures depicting embodiments 1 and 4 (the two-drawer and four-drawer cabinets) and "cancelled" the remaining figures. (Dkt. 106-4 at 2).[1] Ningbo provided no evidence that it took any subsequent action to patent the six-drawer cabinet.

This evidence by Aobafuir, coupled with Ningbo's failure show this defense lacks substantial merit, is sufficient for the Court to find there is a likelihood that Ningbo has no claim of infringement as to Aobafuir's four products that are six-drawer cabinets. (Dkt. 123 at 1; Dkt. 98-1). The Court thus targets the remaining analysis to the Aobafuir's three four-drawer products, which allegedly infringe upon Ninbgo's second embodiment. (*See* Dkt. 117-1 at 12).

### ii. Four-Drawer Cabinet Infringement

To assert design patent infringement, a plaintiff must demonstrate that "an ordinary observer, familiar with the prior art, would believe the accused design to be the same as the

---

[1] (*See, e.g.*, Dkt. 106 at 7).



(Canceled Embodiment)



(Accused Design)

patented design." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed. Cir. 2008). The patentee has the burden of proving infringement of a design patent by a preponderance of the evidence. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015).

Here the Court analyzes whether Ningbo has shown that Aobafuir's four-drawer cabinets infringe on the second embodiment of the '387 Patent. The Court focuses on the ornamental design of the cabinets. First, the '387 Patent's stated claim is "[t]he ornamental design for a striped cabinet." (Dkt. 117-1 at 1). Second, Ningbo and Aobafuir's four-drawer cabinets are similar in their overall shape, and the prior art accounts for many four-drawers cabinets with similar legs and handles. *ABC Corp. I*, 52 F.4th at 942 ("Where a patented design and an accused product are not 'plainly dissimilar,' the court must conduct a three-way analysis comparing the accused product, the patented design, and the prior art." (citing *Egyptian Goddess*, 543 F.3d at 677–78))); (*see also* Dkt. 117-15; Dkt. 106 at 8–14) (noting that the prior art and cabinets at issue all have plain, flat sides and top surfaces, and support legs and drawer handles); Dkt. 106-5 at 16–19 (same). In other words, the "shared dominant feature from the prior art will be no more than a background feature of the design" and, "the focus of the infringement substantial similarity analysis in most cases will be on other features of the design." *Id.*; *see also Midwest Goods Inc. v. Breeze Smoke LLC*, 2024 WL 2785066, at *6 (N.D. Ill. May 30, 2024).

Ningbo argues that Aobafuir's products are "exactly alike" the '387 Patent to "an ordinary observer." (Dkt. 98 at 1). Ningbo's second embodiment of the four-drawer cabinet is shown below:

6



FIG. 10      FIG. 12

(Dkt. 117-1 at 12, 14). Figure 10 shows a "perspective view of the striped cabinet" and has one set of solid lines running from left to right. Figure 12 is the "front elevation view" and shows broken lines in a diamond pattern. The '387 Patent has no other drawings representing the diamond pattern in solid lines from the front view.

Crucially, the '387 Patent specifies: "[t]he broken lines in the figures are for the purposes of illustrating portions of the striped cabinet, which form no part of the claimed design." (Dkt. 117-1 at 1; Dkt. 121 at 40:17–23). On the other hand, Aobafuir's allegedly infringing four-drawer cabinet has a diamond shaped design on its face.

7



(Dkt. 106 at 16; Dkt. 117-2). Ultimately, the Court recognizes the issue boils down to a simple one: are the broken lines in Figures 10 and 12 claimed by the '387 Patent, thereby claiming a diamond pattern, or are only the solid lines claimed, thus claiming a diagonal or "striped" pattern? If the '387 Patent only claims the solid diagonal lines, Ningbo has not shown that Aobafuir's diamond shaped four-drawer cabinets likely infringe upon its products.

To answer this question, the Court considers the evidence presented and the testimony of Aobafuir's expert. At the evidentiary hearing, Aobafuir presented Jim Gandy as an expert. Gandy worked for thirty two years as at the USPTO until he retired in 2005. (Dkt. 108; Dkt. 106-5 ¶¶ 8–17). Since then, Gandy counsels attorneys in filing design patent applications and serves as an expert witness. (*Id.*) Gandy also served as a trainer to the '387 Patent's primary examiner Mimosa De. (Dkt. 121 at 38:6–8). The Court found Gandy's testimony useful and credible.

The Court finds that (1) the expert testimony; (2) the text of the '387 Patent's specification; and (3) the title of the patent all suggest that the broken lines are not claimed by the '387 Patent, meaning that Ningbo has not shown a likelihood that Aobafuir's diamond-shaped ornamentation infringes upon its four-drawer cabinets.

8

In Gandy's declaration and testimony, he unequivocally noted the solid-lined diagonals or "stripes" in Figure 10 are part of the claimed design. (Dkt. 106-5 ¶ 24; Dkt. 121 at 41:1–11). But Gandy also understood that the broken lines forming a diamond pattern in Figures 10 and 12 "form no part of the claimed design." (Dkt. 106-5 ¶ 24; *see* Dkt. 121 at 41:10–11, 23). Serving as further corroboration, the USPTO "Design Patent Application Guide" notes that

> A broken line disclosure is understood to be for illustrative purposes only and forms no part of the claimed design. Structure that is not part of the claimed design, but is considered necessary to show the environment in which the design is used, may be represented in the drawing by broken lines. Similarly, 'surface shading' is to 'show[] the character and contour of all surface' but is not part of the claimed design.

(Dkt. 117-8 at 5). Gandy also found that, using the "ordinary observer test" the '387 Patent's second embodiment was "sufficiently distinct" and "plainly dissimilar" from Aobafuir's allegedly infringing cabinets. (*See* Dkt. 106-5 ¶ 34). In fact, Gandy found the two cabinets to be "patentably distinct" because of the differentiation between the diamond shape and diagonal ornamentation. (Dkt. 121 at 53:17–25, 58:16–59:5). He noted, "[a]nything that's being part of the claimed design has to be shown in solid lines." (*Id.* at 100:7–8). And the '387 Patent's specification states that the broken lines form no part of the claimed design. Thus, "[i]n the absence of further description in the specification, there's nothing else I could interpret them to be other than broken lines. If they were intended to be something else, there probably should have been some statement in the specification identifying what they were." (*Id.* at 82:22–24, 85:18–23, 97:8–11).

Finally, the title of the '387 Patent is a "Striped Cabinet." This comports with an understanding that the '387 Patent claimed the diagonal lines running from left to right and shown in solid lines in Figure 10.

9

### iii. Indefiniteness

Ningbo holds the '387 Patent, issued on September 12, 2023. (Dkt. 117-1). Design patents are presumed to be valid. *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 639 (Fed. Cir. 2015); 35 U.S.C. § 282(a). Yet, a patent may be invalid for indefiniteness "if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901, 910 (2014); *Cox Commc'ns, Inc. v. Sprint Commc'n Co.*, 838 F.3d 1224, 1231 (Fed. Cir. 2016).

Aobafuir argues that Gandy's declaration and testimony establish that the '387 Patent is invalid for indefiniteness because it "does not show a clear understanding about what is actually claimed." (*See* Dkt. 121 at 25:12–14; Dkt. 123 at 2–4). The Court will not determine this fact-intensive inquiry upon the limited record and lackluster briefing. But considering Gandy's expressed confusion and difficulty construing what is claimed in the '387 Patent, Aobafuir has a colorable argument on this point. Gandy repeatedly explained why he had trouble determining "what is actually being claimed here" in light of the broken lines on Figures 10 and 12 and a paucity of further drawings or specification. (*See* Dkt. 121 at 43:13–44:3, 66:4–16 "[I]t's very hard for me to understand what the solid line is supposed to be because I don't see it in the front . . . I don't quite understand from these drawings."), 81:10–19). As Ningbo fails to rebut this argument by showing that it lacks substantial merit, the Court notes that it also supports withholding the preliminary injunction.

Ultimately, Ningbo has not shown that its infringement claim will likely withstand Aobafuir's challenges to the '387 Patent's validity and enforceability. *Metalcraft of Mayville, Inc.*

*v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017). Thus, the preliminary injunction should not issue. *Amazon.com, Inc.*, 239 F.3d at 1350–51.

## II. Irreparable Harm

"A party seeking a preliminary injunction must show it is likely to suffer irreparable harm if the injunction is not granted and establish a causal nexus between the alleged infringement and the alleged harm." *Natera, Inc.*, 106 F.4th at 1378 (citing *Luminara Worldwide, LLC*, 814 F.3d at 1352). "Where the alleged injury is not quantifiable, the harm cannot be adequately compensated and is irreparable." *Id.* (quoting *Metalcraft of Mayville*, 848 F.3d at 1368). Further, "the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." *Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 740 (7th Cir. 2013) (quoting *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)).

As outlined above, Ningbo has not shown it will likely prove infringement. Thus, there is no presumption of irreparable harm. Next, Ningbo only provides conclusory allegations as to irreparable harm and does not show that its injury cannot be adequately compensated by money damages. For example, Ningbo notes that Aobafuir has been "profiting" from its infringement and has been putting on "fire sales" to grab market share. (Dkt. 98 at 11; Dkt. 109 at 6; Dkt. 117-4–6). Yet, lost sales are typically not enough to render harm irreparable. *See Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 300 (Fed. Cir. 2009). True, evidence of head-to-head competition and lost market share can support a showing of irreparable harm. *TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 793 (Fed. Cir. 2019). But the Court has no evidence to support such a finding. *See c.f. Natera, Inc.* 106 F.4th at 1378–79 (finding a likelihood of irreparable harm where

11

the court found direct competition between the parties). Nor did Ningbo provide evidence of sales lost to Aobafuir, or that those sales were lost due to a patented feature. *Id.* Shockingly, Ningbo did not quantify their injury by providing Aobafuir's total number infringing sales to the Court. (*See* Dkt. 121 at 22:1–18). This alone could be a basis to deny or modify the preliminary injunction.

Finally, Ningbo alleges that Aobafuir moves funds from its United States accounts to China-based accounts, hindering their ability to later collect damages. (Dkt. 98 at 3). Though this factor weighs in favor of injunctive relief, *see Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155–56 (Fed. Cir. 2011), Ningbo has made no more than a conclusory allegation of this being so. The Court has no facts before it that Aobafuir resides in China or that any monetary judgment is uncollectible or unavailable. Ultimately, Ningbo does not make a clear showing that it is likely to succeed on the merits, or that it is facing irreparable harm from Aobafuir, requisite to obtain a preliminary injunction.

### III. Remaining Factors

If the movant establishes the threshold factors, the court must then "engage in a balancing analysis, to determine whether the balance of harm favors the moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests." *Gao v. P'ships & Unincorporated Associations Identified on Schedule "A"*, 2022 WL 1028926, at *3 (N.D. Ill. Apr. 4, 2022) (quoting *Whitaker v. Kenosha Unified Sch. Dis. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017)). As the Court finds that Ningbo did not meet its burden as to the first two, most-dispositive factors, it need not engage in the balancing analysis as to the remaining factors. *Reebok Int'l*, 32 F.3d at 1556.

## CONCLUSION

For the foregoing reasons, the Court denies Ningbo's motion for preliminary injunction [96] as to Defendant Aobafuir.

_____
Virginia M. Kendall
United States District Judge

Date: September 20, 2024

13